38 So.3d 50 (2009)
Ex parte Carthell GARNER.
(In re Carthell Garner v. State of Alabama).
1081702.
Supreme Court of Alabama.
November 6, 2009.
W. Gregory Hughes, Mobile, for petitioner.
Submitted on petitioner's brief only.
PER CURIAM.
The petition for the writ of certiorari is denied.
WRIT DENIED.
STUART, SMITH, BOLIN, PARKER, and SHAW, JJ., concur.
LYONS, J., concurs specially.
COBB, C.J., and MURDOCK, J., concur in part and dissent in part.
WOODALL, J., dissents.
LYONS, Justice (concurring specially).
Chief Justice Cobb's special writing, concurring in part and dissenting in part, concludes that Carthell Garner adequately stated a conflict between the Court of Criminal Appeals' unpublished memorandum in his case, Garner v. State (No. CR-08-0187, July 31, 2009), ___ So.3d ___ (Ala.Crim.App.2009) (table), and Grimsley v. State, 632 So.2d 547 (Ala.Crim.App. 1993). Garner's petition includes a fragmentary quote from the Court of Criminal Appeals' unpublished memorandum and attempts to take the quote beyond its context.
Garner points solely to the following statement in the Court of Criminal Appeals' unpublished memorandum: "What [State's witness Howard] Pompey may have personally believed or hoped for would have been a matter left to the jury's determination in weighing the testimony pursuant to the trial court's charge as to bias." (Petition, at p. 5.) Garner then contends *51 that, because he was not allowed to question Howard Pompey regarding his beliefs or hopes as to the disposition of pending charges against Pompey if he testified against Garner, there was nothing for the jury to weigh to determine whether Pompey was biased in favor of the State.
Garner's attempt illustrates the problem of using only fragmentary quotes from an unpublished memorandum or opinion to allege conflict. Garner omits the preceding sentence, which states: "Nor was he prevented from questioning Pompey concerning his role in the present offense in front of the jury." (Emphasis added.) When the two sentences are read together, as they should be, it is apparent that the statement of the Court of Criminal Appeals attacked by Garner relates to the jurors' weighing of any bias based on Pompey's hopes regarding whether he would be prosecuted "concerning his role in the present offense." Because of Garner's ineffective attempt to establish conflict, I concur to deny Garner's petition for the writ of certiorari.
COBB, Chief Justice (concurring in part and dissenting in part).
Carthell Garner's petition for the writ of certiorari adequately demonstrates a sufficient likelihood that the decision of the Court of Criminal Appeals in his case conflicts with Grimsley v. State, 632 So.2d 547 (Ala.Crim.App.1993), to warrant this Court's review. I would grant the petition to review that issue. Accordingly, I respectfully dissent from the Court's decision to deny review as to that ground. As to the other grounds asserted in the petition, I concur to deny review.

Facts and Procedural History
Garner was tried for the June 9, 2007, murders of Ernest Lewis and Danielle Chestang. The murders were alleged to have resulted from a dispute during an illegal drug transaction. On cross-examination, Garner's counsel questioned Howard Pompey, a prosecution witness, as to whether he faced criminal charges based on his role in the transaction that resulted in the charges against Garner. Pompey responded that he had not been charged; however, he said, the police had originally questioned him as to whether he had supplied the victims with marijuana. Garner's counsel then asked Pompey: "As a matter of fact, you've got several cases pending outside of your situation in this case, don't you?" The prosecutor then made a motion in limine outside the presence of the jury, arguing that Garner should be allowed to ask Pompey about prior convictions or charges only if those convictions or charges involved dishonesty or false statement.
The trial court informed Garner's counsel that, because the pending charges against Pompey were filed after he had given his statement to the police in the case against Garner, counsel would not be allowed to question him about those charges. Garner's counsel argued that the jury might find that Pompey believed that giving testimony favorable to the prosecution would help with the charges pending against him, and the trial court stated that it would give the jury a charge as to bias.
Thereafter, outside the presence of the jury, Garner's counsel asked Pompey when he was arrested on the two pending charges. Pompey responded that it was "two to three days ago." Garner's counsel was not allowed to ask any questions to determine whether Pompey was hoping that his testimony in Garner's case might help him receive favorable treatment on the charges pending against him. Pompey testified that he had not had any discussions with the State as to those charges. When Garner's counsel began to question Pompey concerning his involvement in the *52 drug transaction in Garner's case, the trial court informed him that he could question Pompey on that matter in front of the jury; only testimony as to the unrelated pending charges was being elicited on voir dire of the witness Pompey. Because the voir dire of the witness did not reveal any evidence indicating that Pompey and the State had discussed the possibility of favorable treatment on the pending charges, the trial court ruled that defense counsel would not be allowed to question Pompey as to those pending charges in front of the jury.
Garner was convicted of murdering Lewis and Chestang, and he appealed. On appeal, he argued that the trial court improperly prohibited him from proving that Pompey's testimony was biased in favor of the State by the hope that his testimony in Garner's case would benefit him in the other cases pending against him. Garner contended that the trial court improperly limited his cross-examination of Pompey by ruling that, unless Pompey had been involved in conversations with the State regarding favorable treatment on pending charges in return for his testimony, Garner would not be allowed to question Pompey concerning the pending charges. On July 31, 2009, the Court of Criminal Appeals affirmed the trial court's judgment in an unpublished memorandum. Garner v. State (No. CR-08-0187, July 31, 2009), ___ So.3d ___ (Ala.Crim.App.2009) (table). Subsequently, Garner filed a petition for a writ of certiorari in this Court.

Analysis
Garner argues that the decision of the Court of Criminal Appeals conflicts with Grimsley, supra. In Grimsley, the Court of Criminal Appeals held that a trial court violated a criminal defendant's rights under the Sixth Amendment to the United States Constitution when it prohibited the defendant from cross-examining a prosecution witness to show that the witness "was on probation; that she was selling alcoholic beverages, operating a bar, and had committed other acts in connection with the operation of the bar that were in violation of the terms of her probation; ... that she had not been arrested for the violation of her probation"; and that "the witness had some type of deal or `expected' deal with the State pursuant to which she would not be prosecuted for her probation violation in exchange for her testimony." 632 So.2d at 552. The Court of Criminal Appeals also held that the trial court violated the defendant's Sixth Amendment rights by prohibiting cross-examination of another witness "as to whether there were outstanding warrants for her husband's arrest and whether she was testifying in an effort to help her husband." 632 So.2d at 555.
In his petition, Garner quotes the following reasoning of the Court of Criminal Appeals in Grimsley:
"`"[W]henever a prosecution witness may be biased in favor of the prosecution because of outstanding criminal charges or because of any non-final disposition against him within the same jurisdiction, that possible bias, in fairness, must be made known to the jury.... [T]he witness may hope for favorable treatment from the prosecutor if the witness presently testifies in a way that is helpful to the prosecution. And if that possibility exists, the jury should know about it."'
". . . .
"`"`It is generally held, even in jurisdictions where such evidence is not ordinarily admissible, that the fact that a witness has been arrested or charged with crime may be shown or inquired into where it would reasonably tend to show that his testimony might be influenced *53 by interest, bias, or a motive to testify falsely. This principle has been held applicable in cases where criminal charges are pending in the same court against a witness for the prosecution in a criminal case at the time he testifies, as a circumstance tending to show that his testimony is or may be influenced by the expectation or hope that, by aiding in the conviction of the defendant, he would be granted immunity or rewarded by leniency in the disposition of his own case. But it has been held that the pendency of charges against the witness in another county or jurisdiction cannot be shown under this theory of admissibility.'"'"
Grimsley, 632 So.2d at 553 (emphasis added).[1]
Garner argues that under Grimsley he was entitled to question Pompey to determine if Pompey was hoping that his testimony for the State in Garner's case might help him in other cases pending against him, regardless of whether Pompey and the State had specifically discussed that possibility. Garner alleges in his petition that, in affirming the trial court's ruling excluding any testimony by Pompey regarding the criminal charges pending against him unrelated to Garner's case, the Court of Criminal Appeals' decision conflicts with Grimsley. In particular, Garner alleges that Grimsley conflicts with the following statement in the unpublished memorandum of the Court of Criminal Appeals in this case: "What Pompey may have personally believed or hoped for would have been a matter left to the jury's determination in weighing the testimony pursuant to the trial court's charge as to bias."
Garner has demonstrated a conflict with Grimsley. Under Grimsley, he has a right to demonstrate to the jury whether Pompey hoped to gain favorable treatment on charges pending against him in the same jurisdiction by testifying in a way that was helpful to the prosecution. Grimsley, 632 So.2d at 553.
In affirming the trial court's ruling regarding Garner's questioning of Pompey, the Court of Criminal Appeals relied in part on Reeves v. State, 807 So.2d 18 (Ala. Crim.App.2000). In Reeves, the Court of Criminal Appeals held that a criminal defendant did not have the right to question a witness to establish that the witness was biased by the hope of favorable treatment on charges pending against the witness in a different jurisdiction, unless the record contained some independent indication that such a bias might exist (such as a factual relation between the offenses or evidence of an agreement between the State and the witness whereby the witness would testify in exchange for leniency). Reeves, 807 So.2d at 38-39. Further, in Reeves, the Court of Criminal Appeals noted that the record contained some evidence indicating that the witness was not biased because his testimony was substantially the same as a statement he gave police before he was charged with the unrelated offenses. 807 So.2d at 39.
Garner does not distinguish Reeves or argue that Reeves should be overruled. However, he has demonstrated a conflict with Grimsley and a likelihood of success on the merits under Grimsley. The facts of this case present an opportunity to clarify the scope of Grimsley and Reeves and to clearly establish the proper balance between *54 a defendant's Sixth Amendment right to cross-examination and the need to preclude irrelevant prejudicial evidence of a witness's prior bad acts.
For these reasons, I respectfully dissent from the denial of the petition to review the conflict between the decision of the Court of Criminal Appeals in Garner's case and Grimsley. As to all other grounds asserted in the petition, I agree that review is not warranted.
MURDOCK, J., concurs.
NOTES
[1] In his petition, Garner indicated that the first of these quoted paragraphs was an excerpt from Grimsley, but he failed to indicate that the second paragraph, which he also included in his petition, was likewise excerpted from Grimsley.